UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD SOLBERG and DORINE SOLBERG, <br><br> Plaintiffs, <br><br> v. <br><br> BORDEN LIGHT MARINA, INC., MICHAEL LUND, and KEVIN MUNRO, <br><br> Defendants. | Civil Action No. 12-cv-11140 |

## MEMORANDUM AND ORDER

**CASPER, J.**                                             **August 25, 2014**

### I.      Introduction

Plaintiffs Richard Solberg ("Solberg") and Dorine Solberg (collectively, the "Solbergs") have filed this lawsuit against Defendants Borden Light Marina ("BLM"), Michel Lund ("Lund") and Kevin Munro ("Munro"). Solberg alleges general maritime law negligence while Dorine Solberg alleges loss of consortium. D. 1. BLM has moved for summary judgment. D. 38. For the reasons stated below, the Court DENIES BLM's motion.

### II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists when a reasonable jury could resolve the issue in favor of the non-moving party. Farjardo Shopping Ctr., S.E. v. Sun Alliance Ins. Co. of P.R., 167 F.3d 1, 7 (1st Cir. 1999). "A fact is material if it carries with it the potential

1

to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

### III. Factual Background and Procedural History

The following facts are drawn from BLM's statement of material facts and are not disputed by the Solbergs. Solberg is a musician who leads a musical group (the "Band"). D. 39 at 2; D. 46 at 10 ¶ 1-2. Lund is the President of BLM. D. 39 at 2. The Tipsy Seagull is a restaurant and bar owned by Barge, LLC, an entity distinct from BLM. D. 39 at 2; D. 46 at 11 ¶ 14. Solberg and the Band performed at The Tipsy Seagull on the evening of May 27, 2011 and were scheduled to perform again the following evening. D. 39 at 2; D. 46 at 3 ¶ 6.

Before the Band's second performance, Lund took Solberg and others on a boat ride on the Taunton River. D. 39 at 3; D. 46 at 6 ¶ 13. With Lund at the helm, the boat struck a submerged rock resulting in injury to Solberg. D. 39 at 1.

The Solbergs also allege that Lund is a manager of Barge, LLC, the alleged owner of The Tipsy Seagull.[1] D. 46 at 11 ¶ 15 ; D. 46-3 at 5. While not involved in the day to day operations, he supervises The Tipsy Seagull's managers and oversees the hiring of musicians. D. 46 at 11 ¶ 16. Prior to May, 2011, the Band had played at The Tipsy Seagull on at least two occasions. Id. at 12 ¶ 21. For each of the Band's performances, Lund dealt with Solberg to hire the Band and Lund paid the Band's fee. Id. ¶¶ 23-24.

The Tipsy Seagull is located on BLM premises. Id. at 11 ¶ 14. The Tipsy Seagull is a floating bar accessed only by a gangway from a float that houses the BLM fuel dock which is owned and maintained by BLM. Id. at 12 ¶ 22. BLM encouraged its customers to visit The Tipsy Seagull, rewarding them with points they can use to reduce their bills. Id. at 13 ¶ 31. BLM advertises The Tipsy Seagull on its logo, its website and in its newsletters. Id. at 13 ¶ 32. BLM also advertises that it is the home of The Tipsy Seagull while the Tipsy Seagull advertises that it is part of the BLM family. Id. at 13 ¶ 33.

BLM now moves for summary judgment on Count I for negligence and Count II for loss of consortium. D. 38. The Court heard the parties on the pending motion on July 23, 2014 and took the matter under advisement. D. 52.

## IV. Discussion

The doctrine of *respondeat superior* provides that an employer is subject to liability for the torts of its employees committed while acting within the scope of their employment.[2] Dias v. Brigham Med. Assoc., Inc., 438 Mass. 317, 319-20 (2002); Restatement (Third) of Agency §

---

[1] The Solbergs allege these facts in their opposition to BLM's motion for summary judgment. D. 46 at 10-14. BLM does not appear to contest these facts given that BLM did not file a response to the Solbergs' alleged facts.

[2] General maritime law also imputes to the employer the acts of an employee acting within the scope of his employment. Jackson Marine Corp. v. Blue Fox, 845 F.2d 1307, 1310 (5th Cir. 1988); Stoot v. D&D Catering Serv., Inc., 807 F.2d 1197, 1199 (5th Cir. 1987).

2.04 (2006). An employee is acting within the scope of his employment if (1) his conduct is of the kind he is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is motivated, at least in part, by a purpose to serve the employer. Wang Labs., Inc. v. Bus. Incentives, Inc., 398 Mass. 854, 859 (1986) (internal citations omitted); see Roggio v. City of Gardner, No. 10-40076-FDS, 2011 U.S. Dist. LEXIS 34731 at *16 (D. Mass. Mar. 30, 2011); Lev v. Beverly Enters.-Mass., Inc., 457 Mass. 234, 238 (2010); Restatement (Third) of Agency § 7.07 (2006).

BLM argues that it is entitled to summary judgment because the evidence does not demonstrate that BLM was responsible for Lund's actions. D. 39 at 1. According to BLM, Lund was not on duty as president of BLM when the accident occurred, the boat was not owned by BLM and no business was transacted or discussed during the excursion. Id. at 2. BLM notes that the boat ride was not part of the any contract between Solberg (or the Band) and any other party. Id. at 3. BLM points to Solberg's deposition testimony that he did not expect a boat ride as part of his compensation for performing at The Tipsy Seagull. Id. BLM also relies on Lund's deposition testimony to support its contention that Lund hosted Solberg on the boat purely as a friend and not in his role as president of BLM. Id. at 3. The accident occurred on a boat owned by Munro and not by BLM. Id. at 3-4. BLM contends that the unrebutted evidence shows that the boat ride was not authorized or endorsed by BLM and that the boat ride was not part of Solberg's compensation for his performances at The Tipsy Seagull. Id. at 7.

The Solbergs respond that there is a genuine issue of material fact as to whether Lund was acting within the scope of his employment with BLM at the time of the accident. D. 46 at 15. They argue that a jury could reasonably conclude that the boat ride was the type of task Lund was employed to perform at BLM, especially given the scope of Lund's responsibilities, id.

4

at 17, and that the boat ride occurred within the time and space limits authorized by BLM where Lund's position requires him to deal with all facets of BLM's daily operations without regard to location or schedule. Id. at 18. Moreover, the Solbergs assert that that a jury could reasonably conclude that Lund's motivation for the boat ride was at least in part to serve BLM's interests by providing a business-related "perk" to the Band "as part of the deal" for performing at The Tipsy Seagull. Id.

The Court agrees with the Solbergs that there is a genuine issue of material fact as to whether Lund was acting as a BLM employee when he hosted Solberg on the boat ride. Lund had responsibilities at both The Tipsy Seagull and BLM, and the Court cannot conclude, on the present record, that Lund was not acting on behalf of BLM at the time of the accident, particularly where Lund completed BLM-related tasks immediately prior to the boat ride, D. 46 at 14 ¶ 40, he was responsible for organizing social events for BLM customers, id. at 10 ¶ 8-9, and Lund hired Solberg and paid him in cash, id. at 12 ¶ 23. Moreover, when Solberg performed at The Tipsy Seagull, Solberg would sleep on boats docked at BLM, id. 12 ¶ 29, and he testified that boat rides, food and lodging were perks he commonly received as a performer, id. at 13 ¶ 36. BLM encouraged BLM customers to patronize The Tipsy Seagull and its advertising and communications included The Tipsy Seagull. A jury could reasonably conclude that it was within the purview of Lund's authority at BLM to host a performer on a boat ride.

A jury could also conclude that the boat ride occurred within authorized time and space limits given that the boat left from BLM, the premises containing the performance venue, and occurred on a day on which Lund worked at BLM. Finally, a jury could reasonably conclude that Lund was motivated at least in part to serve BLM. The boat ride could be viewed as a perk to performers hired to entertain BLM customers. Lund's desire to promote BLM and organize

events for BLM's customers could have influenced his offer to host Solberg on the boat ride. "[C]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Napier v. F/V DEESIE, Inc., 454 F.3d 61, 66 (1st Cir. 2006), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The Court need not address BLM's argument that there was no apparent authority bestowed on Lund by BLM. "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." CSX Transp., Inc. v. Recovery Express, Inc., 415 F. Supp. 2d 6, 10 (D. Mass. 2006) (quoting Restatement (Third) of Agency §2.03). Apparent authority depends on the words or conduct of the principal, not the agent, and exists only when the third party's belief that the putative agent is authorized to act on behalf of the principal is reasonable. Id. BLM argues that its conduct did not suggest apparent authority and that nothing in the record indicates Solberg's detrimental reliance. D. 39 at 8-9. The Solbergs, however, do not assert that there was apparent authority. D. 46 at 16. The parties agree that Lund was an employee of BLM. D. 39 at 2; D. 46 at 2 ¶ 1. Once an employer-employee relationship is established, the only remaining inquiry is whether the alleged tort occurred within the scope of employment, Dias, 438 Mass. at 322-23 (noting that once an employer-employee relationship has been established, "[a]ll that remains to be determined is whether the tort occurred within the scope of employment"), a matter that, as discussed above, the Court cannot now resolve in BLM's favor.

**V.     Conclusion**

For the foregoing reasons, the Court DENIES BLM's motion for summary judgment, D. 38.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge